# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

| | |
|---|---|
| PROXENSE, LLC<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>INTEL CORPORATION,<br><br>　　　　　　Defendant. | Case No.  7:25-cv-00531<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT AGAINST
## INTEL CORPORATION

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff Proxense, LLC ("Proxense" or "Plaintiff") makes the following allegations against Defendant Intel Corporation ("Defendant" or "Intel"):

## INTRODUCTION

1.　　　This action arises from Intel's unauthorized making, using, selling, offering to sell, and importing processors, chipsets, and platform technologies that, when configured and used as Intel instructs, practice one or more claims of Proxense's patents.

2.　　　Proxense is the owner of six United States patents: United States Patent Nos. 9,405,898 (the "898 Patent"); 10,469,456 (the "456 Patent"); 8,433,919 (the "919 Patent"); 11,182,792 (the "792 Patent"); 11,551,222 (the "222 Patent"); and 9,990,628 (the "628 Patent") (collectively, the "Asserted Patents").

3.　　　The Asserted Patents disclose technical solutions related to secure identity and trusted computing. At a high level, the 898 Patent addresses secure element virtualization that allows consistent interaction with virtualized resources regardless of underlying hardware

variations. The 456 Patent claims methods for accessing computing resources through a personal digital key, biometric authentication, and encrypted policy-based controls. The 919 Patent claims portable digital key authentication combining local biometric comparison with remote registry validation. The 792 Patent discloses wireless proximity authentication and threshold-based transaction flows. The 222 Patent addresses multi-device biometric processing and association in transaction environments. The 628 Patent claims biometric validation coupled with purchasing means information transmitted for remote validation.

4.    Proxense's inventors foresaw, long before others, the need for hardware-rooted trust that could unify secure elements, biometric data, and trusted registries. They patented solutions for virtualizing secure resources, protecting biometric profiles, validating local matches against remote registries, enabling multi-device biometric resolution, and authorizing secure transactions.

5.    Intel develops and supplies processors, chipsets, platforms, and systems that incorporate secure enclaves, firmware-based trusted platform modules, and biometric integration features. Since at least 2013, Intel has shipped CPUs and chipsets containing Platform Trust Technology ("PTT") and the Converged Security and Management Engine ("CSME"), which, when configured and used as Intel instructs, perform methods and use systems claimed in one or more of the Asserted Patents.

6.    Intel has further embedded these security and authentication capabilities into its flagship Intel Evo consumer laptop program and its Intel vPro enterprise platform.[1] These

---

[1] On information and belief, Intel does not sell end-user Intel-branded Evo or vPro systems directly. Instead, Intel sells processors, chipsets, firmware (including the Converged Security and Management Engine ("CSME") and Platform Trust Technology ("PTT")), and platform-enablement technologies to OEMs who manufacture and sell systems certified under Intel's Evo or vPro programs. Intel controls the configuration of these platforms through its Evo and vPro

platforms enforce administrator-defined security actions using encrypted memory, enable biometric authentication, are designed to interoperate with biometric authentication workflows, and support multi-user environments in which biometric input is resolved against multiple registered profiles. Intel's accused products, when configured and used as Intel instructs, perform operations that meet the limitations of at least one claim of each of the Asserted Patents.

7.    Intel markets these features aggressively. For instance, Intel highlights "passwordless" login, "hardware-rooted trust," "Hello compatibility,"[2] and "enterprise-grade biometric security" as key differentiators of its Evo and vPro platforms. Intel also promotes these capabilities as important to its customers' security and to the value of its platforms.

---

specifications, technical requirements, BIOS/UEFI enablement guidelines, and firmware documentation, which require OEMs and IT administrators to enable and use PTT, CSME, and secure-element functions in a manner that practices the asserted claims. Intel also performs, tests, validates, and uses the accused functionality internally before sale. Accordingly, Intel directly infringes under 35 U.S.C. § 271(a), induces infringement under § 271(b) through its OEM instructions, platform specifications, and end-user guidance, and contributes to infringement under § 271(c) by supplying processors and secure firmware components especially adapted for the infringing methods and systems and not suitable for substantial non-infringing uses when configured as Intel instructs.

[2] For all mentions or references to "Hello" or Windows Hello or Windows Hello for Business herein, the following applies: on information and belief, Intel does not directly supply Microsoft's Hello software components. Rather, when Windows Hello is used as Intel instructs and enables through its firmware, including Intel Platform Trust Technology ("PTT") and the Intel Converged Security and Management Engine ("CSME"), Intel processors and firmware execute specific secure-element operations required for Hello to function. These Intel-controlled operations include secure credential storage, key sealing and unsealing, cryptographic validation, policy enforcement, and secure-element virtualization. Intel publishes platform requirements, configuration guides, BIOS enablement instructions, and Evo/vPro specifications that instruct OEMs, IT administrators, and end users to configure systems so that Intel's secure firmware performs these hardware-rooted functions and interoperates with Windows Hello credential workflows in ways that satisfy one or more steps of the asserted claims. Microsoft software is therefore not the basis of infringement; rather, the infringement arises from Intel's own hardware and firmware operations and Intel's inducement of OEMs and end users to enable and use these Intel-controlled secure-element functions.

8.     On information and belief, Intel received written notice of Proxense's patented technology at least as early as 2013, including correspondence from Proxense's licensing representative identifying aspects of Proxense's patent portfolio as available for license. After receiving that notice, Intel continued to make, use, sell, offer to sell, and import the accused products without a license from Proxense. Intel induces infringement by publishing documentation, platform specifications, and configuration guides that encourage and instruct OEMs, IT administrators, and end users to enable and configure PTT, CSME, Evo, vPro, and Hello-enabled systems in ways that practice one or more claims of the Asserted Patents. Intel encourages and instructs OEMs and IT administrators to enable PTT, configure secure boot policies, and integrate TPM-backed biometric authentication through step-by-step technical guides, BIOS requirements, firmware enablement instructions, and platform certification criteria. These actions constitute affirmative acts of inducement. On information and belief, Intel's accused components achieve their marketed functionality, at least in part, by performing steps recited in those claims. Intel contributes to infringement by supplying processors, chipsets, firmware, and software that are designed for use in such configurations.

9.     By this action, Proxense seeks to protect its innovations, recover damages adequate to compensate for Intel's infringement, secure enhanced damages for Intel's willful misconduct, and obtain injunctive and equitable relief to prevent further unlawful exploitation of Proxense's intellectual property.

## THE PARTIES

10.     Plaintiff Proxense, LLC is a Delaware limited liability company with its principal place of business at 689 NW Stonepine Drive, Bend, Oregon 97703.

11.     Proxense develops, in part, secure, user-focused systems related to authentication, digital trust, and transaction security. Its inventors have worked in the fields of biometric-based authentication, secure element virtualization, and personal digital key ("PDK") technology.

12.     Proxense is the owner by assignment of all rights, title, and interest in and to the Asserted Patents in this action. These patents are duly and legally issued by the United States Patent and Trademark Office and are valid and enforceable.

13.     Through these patents, Proxense has invested significant resources in developing technologies used in secure computing, mobile transactions, and enterprise authentication. Proxense continues to innovate and to enforce its intellectual property rights.

14.     On information and belief, Defendant Intel Corporation is a Delaware corporation with a physical address of 1300 South MoPac Expressway, Austin, Texas 78746, and employs more than 2,000 people in Austin. Intel is registered to do business in the State of Texas and has been registered since 1989 (Texas Taxpayer Number 19416727436 and SOS File Number 0008006206). Intel may be served through its registered agent, CT Corporation System, at 1999 Bryan St., Ste. 900, Dallas, TX 75201.

15.     Intel is one of the largest semiconductor manufacturers in the world. Intel designs, develops, manufactures, and sells processors, chipsets, firmware, and platform-level technologies that are deployed globally in consumer, enterprise, and government systems. Intel is the driving force behind widely adopted computing platforms such as the Intel Core processor line, Intel Evo laptops, and Intel vPro enterprise solutions.

16.     Intel maintains a substantial and continuous presence in the State of Texas and in this District. Intel operates a large campus in Austin, Texas consisting of multiple buildings housing engineering, firmware development, validation laboratories, and sales and marketing

operations. On information and belief, Intel employs thousands of individuals in Austin, including engineers, firmware developers, security architects, and platform specialists involved in the design, development, testing, and support of Intel processors and platform technologies, including technologies incorporated into the accused products.

17.     Intel derives substantial revenue from the sale of processors, platforms, and systems that incorporate the accused technologies. Intel's accused products are sold and used in this District.

## JURISDICTION AND VENUE

18.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

19.     Intel is subject to this Court's personal jurisdiction because Intel has committed, and continues to commit, acts of infringement in Texas and in this District. Intel has purposefully directed its activities toward this forum and has continuous, systematic, and purposeful contacts with the State of Texas and this District. Intel has availed itself of the privileges of conducting business here, reaping substantial benefits from its extensive operations, sales, and marketing in this District, while infringing Proxense's patents.

20.     Intel maintains a regular and established place of business in this District. Intel operates a sprawling, multi-building campus in Austin, Texas, which is among Intel's largest U.S. facilities outside of California and Oregon. On information and belief, Intel employs several thousand individuals in Austin, including engineers, firmware developers, platform architects, marketing staff, and sales personnel. On information and belief, Intel employs engineers in Austin whose job responsibilities include developing, testing, validating, or supporting Intel Converged

Security and Management Engine (CSME), Platform Trust Technology (PTT), firmware security modules, or secure boot architectures. Moreover, Intel's Austin campus includes engineering, security architecture, and platform validation teams whose job responsibilities directly relate to CSME, PTT, hardware-backed authentication, and other features identified as infringing.

21.     Intel's Austin facilities are central to Intel's global product strategy. On information and belief, various teams based in Austin are responsible for processor and chipset design, low-level firmware development for PTT and CSME, integration of biometric authentication functionality, security policy management, and enterprise platform validation. These activities are tied directly to the accused products and demonstrate that Intel's infringing activity is being developed, supported, and managed in this District.

22.     Intel also operates sales and marketing operations in Austin, Texas. On information and belief, Intel's local teams market and support the accused platforms, including Evo and vPro systems, to customers in this District.

23.     Intel's accused products are sold and used extensively in this District. Intel's processors and platforms are distributed through major OEM partners, including Dell Technologies, headquartered in Round Rock, Texas, and HP and Lenovo, which maintain substantial operations in Texas. Intel products are also sold through major retailers and e-commerce channels, including Best Buy, Walmart, Costco, Amazon, and others, all of which serve customers throughout this District.

24.     Intel has cultivated deep relationships with Texas-based enterprises, educational institutions, and government agencies. On information and belief, Intel collaborates with Dell on co-branded Evo and vPro systems marketed nationwide from Round Rock. Moreover, on information and belief, Intel sponsors research programs and maintains recruitment pipelines at

the University of Texas at Austin and other Texas universities, and Intel also markets its security and authentication technologies to state agencies, hospitals, banks, energy companies, and Fortune 500 enterprises located in this District.

25.    Intel's accused products are deployed widely in this District and are used by consumers, businesses, educational institutions, healthcare providers, and government agencies. Each such use constitutes an act of direct infringement within this District.

26.    Intel also induces and contributes to infringement in this District. Intel publishes and distributes technical documentation, white papers, developer guides, and certification programs that encourage and instruct OEMs, IT administrators, and end users in this District to enable and use PTT, CSME, Evo, vPro, and Hello-enabled systems in configurations that practice one or more claims of the Asserted Patents.

27.    Intel derives substantial revenue from sales in Texas and this District. Intel's continuous presence here, including its Austin campus, employees, collaborations with OEMs, and sales to customers in this District, makes this District a proper and convenient forum for this dispute.

28.    Venue is proper in this District under 28 U.S.C. § 1400(b) because Intel maintains a permanent physical presence in this District, employs thousands of individuals here engaged in the accused activities, and purposefully directs infringing sales and marketing into this forum, which renders this District both proper and convenient for this action.

## BACKGROUND

## PROXENSE'S INVENTIONS AND INTEL'S MISAPPROPRIATION

29.    The Asserted Patents claim specific, non-abstract technological improvements to secure computing systems. Each patent recites particular sequences of operations performed by

secure elements, dedicated encrypted memory, trusted firmware, or biometric authentication hardware. These claims are rooted in computer technology, address problems arising specifically in computer-security architectures, and provide concrete improvements in device security, interoperability, and hardware-based authentication.

30.     Proxense was founded, in part, to develop improved approaches to authentication and digital trust at a time when computing systems relied heavily on passwords, PINs, and static tokens. Proxense's inventors conceived of the Personal Digital Key ("PDK") architecture, a device that stores biometric profiles in tamper-resistant memory, performs local biometric comparisons, and securely transmits validation data to reader devices.

31.     Proxense's patented inventions did not stop at the PDK. They provided detailed, technical solutions to challenges that had stymied the industry for years. For example, Proxense's 898 Patent disclosed how to virtualize secure element resources, enabling uniform software interaction across devices regardless of hardware variations. The 456 Patent taught how to enforce administrator-defined security policies stored in encrypted memory, providing enterprise-grade flexibility in defining different security actions for different resources. The 919 Patent disclosed the combined use of local biometric matching and remote registry validation, providing layered security. The 792 Patent introduced wireless proximity authentication tied to transaction thresholds, ensuring that small-value transactions could occur seamlessly while higher-value transactions required additional checks. The 222 Patent solved the multi-device problem by enabling reliable association of biometric input with the correct personal digital key. And the 628 Patent disclosed how to validate transactions end-to-end by combining biometric confirmation, secure memory, and registry-based authorization of purchasing means.

32.     These technical solutions were recognized by the United States Patent and Trademark Office, which, after extensive examination, issued the Asserted Patents to Proxense. The issued claims reflect not abstract ideas but concrete engineering solutions designed to improve the security, usability, and interoperability of computing systems. Each patent addressed a different dimension of trusted identity and transaction security, creating a comprehensive framework for secure computing that was years ahead of its time.

33.     The claimed inventions improve the operation of computing hardware itself. Each patent provides specific technical mechanisms that enhance the functionality, security, and interoperability of processors and secure elements, including secure-element virtualization, encrypted policy enforcement tied to biometric authentication, and hardware-backed biometric validation workflows.

34.     Beginning in or around 2013, on information and belief, Intel introduced Platform Trust Technology ("PTT") and the Converged Security and Management Engine ("CSME"), which provide firmware-based trusted platform module functionality and secure execution environments. Intel also launched its Evo and vPro platform brands, which incorporate hardware-backed security and biometric authentication features.

35.     Intel then extended these infringing capabilities into its flagship platform brands. Intel Evo laptops, marketed to consumers as the standard for modern premium laptops, rely on biometric authentication and Windows Hello compatibility that support and can induce the practice of at least the methods of the Asserted Patents. Intel vPro systems, marketed to businesses as secure platforms for enterprise deployment, incorporate administrator-defined security policies, encrypted storage of biometric profiles, and registry validation mechanisms that embody Proxense's patented solutions.

36.     These infringing features were not ancillary. Intel highlighted them as critical differentiators in its marketing. Intel touted "passwordless login," "Hello integration," "enterprise-grade biometric security," and "hardware-based trust" as defining features of Evo and vPro platforms. Intel emphasized that biometric authentication, seamless proximity-based login, and hardware-rooted security were essential to its customers' needs. On information and belief, Intel used these features, which were first conceived and patented by Proxense, to compete against rivals, win OEM design slots, and maintain its position in the marketplace.

37.     Intel's infringement was deliberate. Intel had actual knowledge of Proxense's patented technologies as early as 2013 and constructive knowledge thereafter. Intel was further reminded of Proxense's patent portfolio during prior litigation involving related technologies, yet continued its infringing activities unabated. Rather than seek a license, Intel incorporated the patented techniques into its PTT and CSME architectures, and subsequently touted those same capabilities as proprietary innovations. Intel's continued rollout of infringing systems after multiple public enforcement actions by Proxense constitutes willful infringement. Indeed, Intel has long known of Proxense and its patent portfolio. Despite this knowledge, Intel deliberately incorporated Proxense's patented technologies into its processors, firmware, and platforms without authorization. Intel induced infringement by instructing OEMs, IT administrators, and end users to configure PTT, Hello, Evo, and vPro systems in infringing ways. Intel contributed to infringement by supplying processors, firmware, and documentation specifically designed to enable infringing configurations.

38.     Intel's infringement has caused substantial harm to Proxense. By appropriating Proxense's patented inventions without license, Intel has deprived Proxense of fair licensing revenue, eroded the value of Proxense's patent portfolio, and allowed Intel to unfairly dominate

the market for secure computing platforms. Proxense's pioneering solutions enabled the very features Intel now markets as indispensable to modern computing. Intel has reaped enormous profits while Proxense has borne the costs of research, development, and patenting.

39.    Intel's infringement is ongoing and pervasive. Intel has shipped hundreds of millions of processors and chipsets incorporating PTT and CSME. Intel Evo and vPro platforms are deployed in consumer laptops, enterprise PCs, hospitals, universities, financial institutions, and government agencies worldwide, including extensively in this District. Each of these deployments represents the unauthorized practice of Proxense's patented technologies.

40.    Intel's incorporation of Proxense's patented features has generated substantial commercial value. Hardware-rooted trust, biometric authentication, and passwordless login are cornerstone capabilities that Intel uses to certify and differentiate its Evo and vPro platforms. Comparable security and authentication technologies are typically licensed on a per-unit or percentage-of-revenue basis in the semiconductor and OEM industries. Intel's unauthorized use of these features has deprived Proxense of fair market compensation and has conferred upon Intel an unjust competitive advantage.

41.    Intel's willful infringement has given it an unjust competitive advantage. By adopting and marketing Proxense's patented inventions as its own, Intel has positioned itself as a leader in secure computing, gained the trust of enterprise and consumer customers, and leveraged these features to strengthen its ecosystem partnerships with Microsoft, Dell, HP, Lenovo, and others. This advantage was secured not by Intel's innovation, but by its unauthorized exploitation of Proxense's patented technologies.

## THE ASSERTED PATENTS

42.     Proxense is the owner, by assignment, of all rights, title, and interest in and to the Asserted Patents. Each of the Asserted Patents was duly and legally issued by the United States Patent and Trademark Office ("USPTO"), and each remains valid and enforceable. True and correct copies of the Asserted Patents are attached hereto as Exhibits A to F.

43.     U.S. Patent No. 9,405,898 (the 898 Patent) entitled "Secure Element as a Digital Pocket," was duly issued by the USPTO on August 2, 2016. A true and correct copy of the 898 Patent is attached hereto as **Exhibit A**.

44.     The 898 Patent addresses the problem of fragmented secure elements in computing devices. Prior to Proxense's invention, different devices employed different architectures for secure elements, making software development inconsistent and unreliable. The 898 Patent discloses methods for presenting virtual resources to a secure element, mapping those virtual resources to available physical resources, and providing hardware abstraction so that software interacts consistently with secure functions regardless of underlying architecture.

45.     Intel's processors and chipsets incorporating Platform Trust Technology ("PTT") and Converged Security and Management Engine ("CSME") practice the claims of the 898 Patent. Intel's PTT virtualizes secure element functionality in firmware, mapping virtual resources to varying physical hardware resources depending on model and platform, and thereby providing the precise hardware abstraction disclosed and claimed in the 898 Patent.

46.     U.S. Patent No. 10,469,456 (the 456 Patent) entitled "Security System and Method for Controlling Access to Computing Resources," was duly issued by the USPTO on November 5, 2019. A true and correct copy of the 456 Patent is attached hereto as **Exhibit B**.

47.     The 456 Patent addresses the problem of secure and granular access control to different computing resources. It introduces the concept of receiving security data from a personal digital key (PDK) after biometric authentication, determining setup data stored in encrypted memory, and enforcing administrator-defined policies that can vary across resources while being consistent across users of the same resource.

48.     Intel's Evo consumer laptop platform and its vPro enterprise platform implement the claims of the 456 Patent. These accused systems receive biometric authentications, enforce security setup data stored in dedicated encrypted partitions of Intel CSME, and apply administrator-defined options to differentiate access control policies between resources.

49.     U.S. Patent No. 8,433,919 (the 919 Patent) entitled "Two-Level Authentication for Secure Transactions," was duly issued by the USPTO on April 30, 2013. A true and correct copy of the 919 Patent is attached hereto as **Exhibit C**.

50.     The 919 Patent discloses secure authentication using a portable key that stores biometric profiles in tamper-resistant memory, performs local biometric comparisons against profile samples, and validates the transaction by communicating with a remote registry over a secure channel.

51.     Intel Core processors perform each step of the claimed methods of the 919 Patent.

52.     U.S. Patent No. 11,182,792 (the 792 Patent) entitled "Personal Digital Key Initialization and Registration for Secure Transactions," was duly issued by the USPTO on November 23, 2021. A true and correct copy of the 792 Patent is attached hereto as **Exhibit D**.

53.     The 792 Patent solves the problem of balancing seamless user experience with transaction security in proximity-based systems. It discloses methods whereby a reader detects a portable device in proximity, establishes wireless communication, validates the device locally,

applies a threshold for automatic transactions, and requests biometric profile authentication for higher-value transactions.

54.    Intel's Hello enrollment and provisioning flows practice the inventions of the 792 Patent. Intel systems detect devices, validate their identity locally, process transactions under preset thresholds automatically, and require biometric authentication for transactions above those thresholds.

55.    U.S. Patent No. 11,551,222 (the 222 Patent) entitled "Single Step Transaction Authentication Using Proximity and Biometric Input," was duly issued by the USPTO on January 10, 2023. A true and correct copy of the 222 Patent is attached hereto as **Exhibit E**.

56.    The 222 Patent addresses the collision problem that arises when multiple biometric-capable devices are present in proximity. It discloses methods whereby a reader receives biometric samples from multiple devices, captures a biometric input at the time of transaction, compares the input to the samples, identifies the correct match, and associates the correct device with the transaction.

57.    Intel Evo laptops and Intel vPro systems practice the inventions of the 222 Patent. These accused systems support multi-user environments with Hello integration and participate in workflows in which biometric inputs are compared against registered profiles to determine the appropriate user account. On information and belief, these accused systems are incapable of performing their advertised multi-user biometric functionality without performing the steps of the asserted claims.

58.    U.S. Patent No. 9,990,628 (the 628 Patent) entitled "Two-Level Authentication for Secure Transactions," was duly issued by the USPTO on June 5, 2018. A true and correct copy of the 628 Patent is attached hereto as **Exhibit F**.

59.     The 628 Patent discloses methods whereby a personal digital key receives biometric input, performs local comparisons against stored samples, retrieves the full profile from secure memory, re-validates the biometric input, and participates in workflows that involve transmitting authorization or transactional data.

60.     Intel platforms practice the inventions of the 628 Patent. Intel firmware (PTT/CSME) performs secure-element operations, such as key sealing/unsealing, credential release, credential gating, and secure authentication flows, that are required for the OS or credential subsystem to perform biometric comparisons or authorization decisions. These Intel-controlled operations constitute the recited steps or are indispensable components of the recited methods.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 9,405,898

61.     Proxense realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

62.     On August 2, 2016, the United States Patent and Trademark Office duly and legally issued the 898 Patent, entitled "Secure Element as a Digital Pocket." A true and correct copy is attached hereto as **Exhibit A**.

63.     The technology disclosed in the 898 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the 898 Patent.

64.     The 898 Patent was a pioneering disclosure that addressed a problem plaguing secure computing systems for decades: different host devices used different secure elements (e.g., discrete TPMs, firmware-based modules, smartcards, or embedded security chips), making it impossible for software to reliably and consistently interact with those elements. Proxense's

inventors foresaw that in order for hardware-based trust to scale, secure element resources had to be virtualized, abstracted, and presented to applications in a uniform manner, regardless of the underlying physical implementation.

65.     The 898 Patent claims at least a method in which a secure element presents one or more virtual resources and maps those resources to available physical resources based on a model architecture of the secure element and host device. By enabling hardware abstraction, the invention allowed software to consistently interact with secure resources even when the physical resources varied across devices or generations of hardware. This innovation not only improved compatibility but enabled entirely new forms of trusted computing.

66.     Intel has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the 898 Patent, including at least independent Claim 8, by making, using, offering to sell, selling, and/or importing, among other things, processors, chipsets, and platforms incorporating Platform Trust Technology ("PTT") and the Converged Security and Management Engine ("CSME"), which include, without limitation: any Intel CPUs, processors, chips, or chipsets with Platform Trust Technology (PTT) and Converged Security and Management Engine (CSME), deployed across all Intel Core processors, Evo laptops, or vPro enterprise platforms ("898 Accused Products"). Such infringing acts have occurred and continue to occur in the United States, including within this District, through Intel's internal use, testing, validation, and demonstration of the accused products, as well as through Intel's inducement of OEM and end-user operation.

67.     An exemplary claim chart mapping independent Claim 8 to example, representative 898 Accused Products is attached hereto as **Exhibit G**.

68.    Intel's accused processors are designed so that PTT presents virtualized secure element resources through PTT, enabling operating systems and applications to interface consistently with trusted platform functions without regard to whether the underlying implementation uses a discrete TPM or an integrated firmware solution. Intel's CSME provides the model architecture for mapping those virtualized resources to physical hardware elements, thereby providing the precise "hardware abstraction" taught in the 898 Patent.

69.    For example, Intel's own documentation confirms that Intel PTT is a firmware-based Trusted Platform Module implementation fully compatible with the TPM 2.0 specification. Intel represents to OEMs and developers that PTT provides the same functions as a discrete TPM while abstracting the underlying physical resources. This matches the claimed invention's requirement that virtual resources be mapped to available physical resources to provide consistent interaction regardless of variation.

70.    Intel induces infringement of the 898 Patent by instructing, for instance, OEMs, IT administrators, and end users to enable PTT/CSME in BIOS, to configure Windows and enterprise software to interact with PTT as if it were a discrete TPM, and to deploy Intel processors in ways that necessarily practice the asserted claims. Intel provides whitepapers, SDKs, validation guides, and customer support that encourage and facilitate infringing uses. Intel's inducement is knowing and intentional: Intel provides step-by-step configuration instructions that, when followed, necessarily perform each step of the claimed methods.

71.    Intel contributes to infringement by supplying processors and chipsets with PTT and CSME that are made or adapted for use in infringing systems. On information and belief, PTT's purpose is to serve as a virtualized TPM; its intended use is infringing, and it has no substantial non-infringing use.

72.     Intel's infringement has been and remains willful. Intel knew or was willfully blind to the existence of the Asserted Patent and of Proxense's broader patent portfolio since at least 2013. Despite that knowledge, Intel deliberately integrated the patented functionality into its products and continued those activities after repeated notice, demonstrating reckless disregard for Proxense's rights.

73.     As a direct and proximate result of Intel's infringement of the 898 Patent, Proxense has suffered and continues to suffer damages in an amount to be proven at trial, no less than a reasonable royalty, and is entitled to enhanced damages for willfulness, attorneys' fees under 35 U.S.C. § 285, and all other appropriate relief.

74.     To the extent any limitation is not literally met, Intel infringes under the doctrine of equivalents because the accused Intel hardware, firmware, and secure-element operations perform substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation. This includes at least the secure storage of biometric or credential data, secure gating of access decisions, secure-element virtualization, secure credential release, and local validation functions.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 10,469,456

75.     Proxense realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

76.     On November 5, 2019, the United States Patent and Trademark Office duly and legally issued the 456 Patent, entitled "Security System and Method for Controlling Access to Computing Resources." A true and correct copy is attached hereto as **Exhibit B**.

77.    The technology disclosed in the 456 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the 456 Patent.

78.    The 456 Patent discloses and claims methods for controlling access to secured computing resources by using a Personal Digital Key ("PDK") that stores biometric authentication data, transmits security credentials after biometric verification, and interacts with a computing device whose security setup data is stored in dedicated encrypted memory. The claimed invention further allows administrators to define differentiated policies for different resources, ensuring consistent enforcement of authentication requirements across users of a particular resource while permitting variation between resources.

79.    The 456 Patent was a breakthrough because it introduced a way to unify biometric authentication with granular, administrator-defined policies at the hardware and firmware level. At the time of filing, no industry standard existed for separating biometric confirmation from resource-specific policy enforcement in encrypted system memory. The PTO recognized this as a nonobvious and valuable contribution, granting the 456 Patent after detailed review.

80.    Intel has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the 456 Patent, including at least independent Claim 11, by making, using, offering for sale, selling, and/or importing, among other things, Intel Evo laptops and Intel vPro PCs and laptops, which include, without limitation: any Intel Evo laptops (consumer) or Intel vPro PCs/laptops (enterprise), equipped with Intel Platform Trust Technology (PTT), Converged Security and Management Engine (CSME), and Windows Hello biometric authentication ("456 Accused Products"). Such infringing acts have occurred and continue to occur in the United States, including within this District, through Intel's internal use,

testing, validation, and demonstration of the accused products, as well as through Intel's inducement of OEM and end-user operation.

81.    An exemplary claim chart mapping independent Claim 11 to example, representative 456 Accused Products is attached hereto as **Exhibit H**.

82.    Intel Evo and vPro platforms are configured to perform operations that meet the limitations of the claimed invention. After biometric input is authenticated through Windows Hello on a supported integrated Hello device, the Intel-based computing device receives security data that is then processed against setup data stored in an encrypted firmware partition (CSME). Administrators define policies, such as requiring biometric confirmation for certain protected resources but not others, that are enforced consistently across all users of the same resource. These functionalities map directly to the limitations of Claim 11.

83.    Intel induces infringement of the 456 Patent by publishing and distributing documentation to OEMs and enterprises instructing them to configure Evo and vPro platforms for biometric login, secure memory enforcement of policy, and administrator-controlled differentiation of resources. On information and belief, Intel provides deployment guides to IT administrators specifically touting these features as security differentiators. Intel's inducement is knowing and intentional: Intel provides step-by-step configuration instructions that, when followed, necessarily perform each step of the claimed methods.

84.    Intel contributes to infringement by supplying processors and firmware with secure enclaves, encrypted memory partitions, and Hello integration that are designed to implement the methods of the 456 Patent. These products are especially adapted for infringing uses and lack substantial non-infringing uses.

85. Intel's infringement has been and remains willful. Intel knew or was willfully blind to the existence of the Asserted Patent and of Proxense's broader patent portfolio since at least 2013. Despite that knowledge, Intel deliberately integrated the patented functionality into its products and continued those activities after repeated notice, demonstrating reckless disregard for Proxense's rights.

86. As a direct result of Intel's infringement of the 456 Patent, Proxense has suffered and continues to suffer damages in an amount to be proven at trial, no less than a reasonable royalty, and is entitled to enhanced damages for willfulness, attorneys' fees under 35 U.S.C. § 285, and all other appropriate relief.

87. To the extent any limitation is not literally met, Intel infringes under the doctrine of equivalents because the accused Intel hardware, firmware, and secure-element operations perform substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation. This includes at least the secure storage of biometric or credential data, secure gating of access decisions, secure-element virtualization, secure credential release, and local validation functions.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,433,919

88. Proxense realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

89. On April 30, 2013, the United States Patent and Trademark Office duly and legally issued the 919 Patent, entitled "Two-Level Authentication for Secure Transactions." A true and correct copy is attached hereto as **Exhibit C**.

90.     The technology disclosed in the 919 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the 919 Patent.

91.     The 919 Patent discloses at least methods for secure authentication using a physical portable key that stores a biometric profile and a biometric sample in tamper-proof memory, performs a local biometric comparison at the portable key, and validates the device and transaction by communicating with a remote registry via a secure channel.

92.     The claimed invention was groundbreaking because it provided a layered approach to biometric validation: a quick, local comparison against a sample, followed by a secure, registry-based validation of the full profile and device registration. This solved the industry problem of balancing performance, user convenience, and uncompromising security.

93.     Intel has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the 919 Patent, including at least independent Claim 25, by making, using, offering for sale, selling, and/or importing, among other things, Intel Core processors, which include, without limitation: any Intel Core processors (e.g., 8th to 14th Generation and beyond) incorporating Platform Trust Technology (PTT) and Converged Security and Management Engine (CSME), when used with Windows Hello and Hello for Business on Intel Evo and vPro platforms ("919 Accused Products"). Such infringing acts have occurred and continue to occur in the United States, including within this District, through Intel's internal use, testing, validation, and demonstration of the accused products, as well as through Intel's inducement of OEM and end-user operation.

94.     An exemplary claim chart mapping independent Claim 25 to example, representative 919 Accused Products is attached hereto as **Exhibit I**.

95.    Intel's accused systems practice the claimed methods. Biometric profiles are stored in Intel Secure Enclave memory. A smaller biometric sample is stored and used for quick local comparisons. Windows Hello, working with Intel processors, is configured to perform the local comparison and then validates the device and transaction by communicating with Microsoft's Hello registry over a secure channel. Intel firmware (PTT/CSME) performs secure-element operations—such as key sealing/unsealing, credential release, credential gating, and secure authentication flows—that are required for the OS or credential subsystem to perform biometric comparisons or authorization decisions. These Intel-controlled operations constitute the recited steps or are indispensable components of the recited methods. This matches each limitation of Claim 25.

96.    Intel induces infringement of the 919 Patent by encouraging OEMs, IT administrators, and end users to enable Windows Hello on Intel processors, to register biometric profiles, and to rely on remote registry validation. Intel provides marketing and deployment materials emphasizing local match plus registry validation as the foundation of secure, passwordless login. Intel's inducement is knowing and intentional: Intel provides step-by-step configuration instructions that, when followed, necessarily perform each step of the claimed methods.

97.    Intel contributes to infringement by supplying processors and firmware designed to store biometric profiles, perform local comparisons, and integrate with Hello registries. These functionalities have no substantial non-infringing use.

98.    Intel's infringement has been and remains willful. Intel knew or was willfully blind to the existence of the Asserted Patent and of Proxense's broader patent portfolio since at least 2013. Despite that knowledge, Intel deliberately integrated the patented functionality into its

products and continued those activities after repeated notice, demonstrating reckless disregard for Proxense's rights.

99.     As a direct and proximate result of Intel's infringement of the 919 Patent, Proxense has suffered and continues to suffer damages in an amount to be proven at trial, no less than a reasonable royalty, and is entitled to enhanced damages for willfulness, attorneys' fees under 35 U.S.C. § 285, and all other appropriate relief.

100.     To the extent any limitation is not literally met, Intel infringes under the doctrine of equivalents because the accused Intel hardware, firmware, and secure-element operations perform substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation. This includes at least the secure storage of biometric or credential data, secure gating of access decisions, secure-element virtualization, secure credential release, and local validation functions.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 11,182,792

101.     Proxense realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

102.     On November 23, 2021, the United States Patent and Trademark Office duly and legally issued the 792 Patent, entitled "Personal Digital Key Initialization and Registration for Secure Transactions." A true and correct copy is attached hereto as **Exhibit D**.

103.     The technology disclosed in the 792 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the 792 Patent.

104.    The 792 Patent discloses methods by which a reader device determines that a portable device is within proximity, establishes wireless communication, validates the portable device locally without remote lookup, applies transaction thresholds to determine whether automatic processing is allowed, and requests biometric profile authentication for transactions above the threshold.

105.    The claimed invention addressed the need for seamless, low-friction user experiences in proximity authentication while preserving security for higher-value or higher-risk transactions. The PTO recognized this as a technical solution that balanced convenience with strong biometric safeguards.

106.    Intel has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the 792 Patent, including at least independent Claim 1, by making, using, offering for sale, selling, and/or importing, among other things, Intel platforms implementing Windows Hello enrollment and provisioning flows, which include, without limitation: any Intel Core processors (8th to 14th Generation and beyond), Intel Evo laptops, Intel vPro enterprise platforms, all with Intel PTT/CSME capabilities plus Windows Hello enrollment/provisioning ("792 Accused Products"). Such infringing acts have occurred and continue to occur in the United States, including within this District, through Intel's internal use, testing, validation, and demonstration of the accused products, as well as through Intel's inducement of OEM and end-user operation.

107.    An exemplary claim chart mapping independent Claim 1 to example, representative 792 Accused Products is attached hereto as **Exhibit J**.

108.    Intel's accused systems support workflows that involve detecting devices, establishing wireless or other communication channels, validating device identity locally (e.g.,

without external registry lookup for low-value operations), determining transaction thresholds, and requiring biometric profile authentication for transactions above threshold.

109.    Intel induces infringement of the 792 Patent by instructing administrators and users to enable Hello enrollment and provisioning and to rely on the very flows that match the 792 Patent. Intel's inducement is knowing and intentional: Intel provides step-by-step configuration instructions that, when followed, necessarily perform each step of the claimed methods.

110.    Intel contributes to infringement by supplying processors and firmware specifically designed for proximity-based authentication and policy threshold enforcement, with no substantial non-infringing use.

111.    Intel's infringement has been and remains willful. Intel knew or was willfully blind to the existence of the Asserted Patent and of Proxense's broader patent portfolio since at least 2013. Despite that knowledge, Intel deliberately integrated the patented functionality into its products and continued those activities after repeated notice, demonstrating reckless disregard for Proxense's rights.

112.    As a direct and proximate result of Intel's infringement of the 792 Patent, Proxense has suffered and continues to suffer damages in an amount to be proven at trial, no less than a reasonable royalty, and is entitled to enhanced damages for willfulness, attorneys' fees under 35 U.S.C. § 285, and all other appropriate relief.

113.    To the extent any limitation is not literally met, Intel infringes under the doctrine of equivalents because the accused Intel hardware, firmware, and secure-element operations perform substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation. This includes at least the secure storage of biometric or credential

data, secure gating of access decisions, secure-element virtualization, secure credential release, and local validation functions.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 11,551,222

114.    Proxense realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

115.    On January 10, 2023, the United States Patent and Trademark Office duly and legally issued the 222 Patent, entitled "Single Step Transaction Authentication using Proximity and Biometric Input." A true and correct copy is attached hereto as **Exhibit E**.

116.    The technology disclosed in the 222 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the 222 Patent.

117.    The 222 Patent discloses methods for handling environments where multiple biometric-capable devices are present. A reader device receives biometric samples from multiple devices, captures biometric input at the point of transaction, compares the input against the received samples, identifies the match, and associates the correct device with the transaction.

118.    This invention solved the "collision problem" of multiple devices being in proximity simultaneously, ensuring that only the correct device is associated with the transaction. The PTO recognized this as an inventive step beyond prior art.

119.    Intel has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the 222 Patent, including at least independent Claim 1, by making, using, offering for sale, selling, and/or importing, among other things, Intel Evo laptops and Intel vPro PCs and laptops, which include, without limitation: any Intel Evo

consumer laptops and Intel vPro enterprise PCs or laptops with Intel Core processors (8th to 14th Generation and beyond) running Intel PTT/CSME secure enclaves and Windows Hello biometric authentication ("222 Accused Products"). Such infringing acts have occurred and continue to occur in the United States, including within this District, through Intel's internal use, testing, validation, and demonstration of the accused products, as well as through Intel's inducement of OEM and end-user operation.

120.    An exemplary claim chart mapping independent Claim 1 to example, representative 222 Accused Products is attached hereto as **Exhibit K**.

121.    The accused systems of the 222 Patent support multiple users and devices in shared environments, capture biometric input, compare it against stored biometric samples, and associate the correct account/device with the transaction, directly mapping to the claim limitations. Intel firmware (PTT/CSME) performs secure-element operations—such as key sealing/unsealing, credential release, credential gating, and secure authentication flows—that are required for the OS or credential subsystem to perform biometric comparisons or authorization decisions. These Intel-controlled operations constitute the recited steps or are indispensable components of the recited methods.

122.    Intel induces infringement of the 222 Patent by promoting Evo and vPro as multi-user enterprise systems with Hello integration, instructing administrators and users to enroll multiple biometric profiles and use them concurrently. Intel's inducement is knowing and intentional: Intel provides step-by-step configuration instructions that, when followed, necessarily perform each step of the claimed methods.

123.    Intel contributes to infringement by supplying firmware and platform integrations designed for multi-user biometric processing.

124.    Intel's infringement has been and remains willful. Intel knew or was willfully blind to the existence of the Asserted Patent and of Proxense's broader patent portfolio since at least 2013. Despite that knowledge, Intel deliberately integrated the patented functionality into its products and continued those activities after repeated notice, demonstrating reckless disregard for Proxense's rights.

125.    As a direct and proximate result of Intel's infringement of the 222 Patent, Proxense has suffered and continues to suffer damages in an amount to be proven at trial, no less than a reasonable royalty, and is entitled to enhanced damages for willfulness, attorneys' fees under 35 U.S.C. § 285, and all other appropriate relief.

126.    To the extent any limitation is not literally met, Intel infringes under the doctrine of equivalents because the accused Intel hardware, firmware, and secure-element operations perform substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation. This includes at least the secure storage of biometric or credential data, secure gating of access decisions, secure-element virtualization, secure credential release, and local validation functions.

## COUNT VI

## INFRINGEMENT OF U.S. PATENT NO. 9,990,628

127.    Proxense realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

128.    On June 5, 2018, the United States Patent and Trademark Office duly and legally issued the 628 Patent, entitled "Two-Level Authentication for Secure Transactions." A true and correct copy is attached hereto as **Exhibit F**.

129.    The technology disclosed in the 628 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the 628 Patent.

130.    The 628 Patent discloses methods for biometric transaction processing in which a PDK receives biometric input, generates biometric data, compares it locally to a stored profile sample, retrieves the full biometric profile from secure memory, compares the input against the full profile, and participates in workflows that involve transmitting authorization or transactional data within Windows Hello or related services.

131.    This invention was significant because it tied biometric validation directly to registry-based authorization of financial or transactional data, providing an end-to-end framework for secure commerce.

132.    Intel has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the 628 Patent, including at least independent Claim 1, by making, using, offering for sale, selling, and/or importing, among other things, Intel platforms, which include, without limitation: any Intel Evo consumer laptops and Intel vPro enterprise PCs or laptops using Intel Core processors (8th to 14th Generation and beyond) with Platform Trust Technology (PTT), Converged Security and Management Engine (CSME), and Windows Hello biometric authentication ("628 Accused Products"). Such infringing acts have occurred and continue to occur in the United States, including within this District, through Intel's internal use, testing, validation, and demonstration of the accused products, as well as through Intel's inducement of OEM and end-user operation.

133.    An exemplary claim chart mapping independent Claim 1 to example, representative 628 Accused Products is attached hereto as **Exhibit L**.

134.    Intel's accused systems practice the claimed methods by capturing biometric inputs via Hello, performing sample-based local comparisons, retrieving the full biometric profile from secure enclave memory, re-validating the biometric input against the profile, and transmitting purchasing or transactional data for registry-based validation. Intel firmware (PTT/CSME) performs secure-element operations—such as key sealing/unsealing, credential release, credential gating, and secure authentication flows—that are required for the OS or credential subsystem to perform biometric comparisons or authorization decisions. These Intel-controlled operations constitute the recited steps or are indispensable components of the recited methods.

135.    Intel induces infringement of the 628 Patent by instructing OEMs, administrators, and end users to configure platforms for biometric payment and validation transactions that embody the claimed methods. Intel's inducement is knowing and intentional: Intel provides step-by-step configuration instructions that, when followed, necessarily perform each step of the claimed methods.

136.    Intel contributes to infringement by supplying processors, firmware, and platform integrations that are designed to perform these functions and lack non-infringing alternatives.

137.    Intel's infringement has been and remains willful. Intel knew or was willfully blind to the existence of the Asserted Patent and of Proxense's broader patent portfolio since at least 2013. Despite that knowledge, Intel deliberately integrated the patented functionality into its products and continued those activities after repeated notice, demonstrating reckless disregard for Proxense's rights.

138.    As a direct and proximate result of Intel's infringement of the 628 Patent, Proxense has suffered and continues to suffer damages in an amount to be proven at trial, no less than a

reasonable royalty, and is entitled to enhanced damages for willfulness, attorneys' fees under 35 U.S.C. § 285, and all other appropriate relief.

139.    To the extent any limitation is not literally met, Intel infringes under the doctrine of equivalents because the accused Intel hardware, firmware, and secure-element operations perform substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation. This includes at least the secure storage of biometric or credential data, secure gating of access decisions, secure-element virtualization, secure credential release, and local validation functions.

## PRAYER FOR RELIEF

WHEREFORE, Proxense respectfully requests that this Court enter:

a.    That the Court adjudge and declare that Intel has infringed, literally and/or under the doctrine of equivalents, one or more valid and enforceable claims of each of the Asserted Patents, including U.S. Patent Nos. 9,405,898; 10,469,456; 8,433,919; 11,182,792; 11,551,222; and 9,990,628;

b.    That the Court adjudge and declare that Defendant's acts of infringement have been and continue to be willful, deliberate, and in conscious disregard of Proxense's patent rights;

c.    A permanent injunction prohibiting Defendant from further acts of infringement of the Asserted Patents;

d.    A judgment and order requiring Defendant to pay Proxense its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the Asserted Patents;

e.    That Proxense is entitled to damages adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty;

f.    That Proxense is entitled to ongoing royalties for Defendant's continuing infringement and to injunctive relief preventing Defendant from further unauthorized use of Proxense's patented technologies;

g.    A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Proxense, including without limitation, pre-judgment and post-judgment interest;

h.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Proxense its reasonable attorneys' fees against Defendant; and

i.    Any and all other relief as the Court may deem appropriate and just under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Proxense, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: November 14, 2025

*/s/ David L. Hecht*
David L. Hecht
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: 212-851-6821
E: dhecht@hechtpartners.com